Underwood agt. The New-York and New-Haven Railroad Co.

## SUPREME COURT.

JOHN A. UNDERWOOD and others agt. THE NEW-YORK AND NEW-HAVEN RAILROAD COMPANY.

An *injunction* was granted against the defendants in this action, restraining them from paying a *dividend*, declared by them on the stock of the corporation, to any stockholders of the corporation, except such as can be ascertained to hold none of the spurious stock issued by Schuyler, and from making any future dividend on the stock, until, by the decision of some court of competent juris

diction, it shall be established who are the genuine stockholders in the com-
pany, or until the further order of the court.
The application was made on the alleged ground that the plaintiffs are genuine
stockholders of the defendants' corporation, and that, among the persons who
are designated as stockholders in the company, there are several holding the
false stock, or that which was fraudulently issued by Schuyler, according to a
second examination by a Mr. Holbrook (not authorized by the defendants) of the
books of the defendants, in order to make out a new list of stockholders.

*New - York Special Term, September,* 1859.
MOTION for an injunction.

INGRAHAM, Justice.   This action is brought by the plain-
tiffs, who claim to be owners of some of the stock of the New-
Haven Railroad Company, to restrain the company from pay-
ing a dividend which was lately declared by the directors, upon
the ground that, among the persons who are designated as
stockholders in the company, there are several holding the
false stock, or that which was fraudulently issued by Schuy-
ler; and also to restrain the company from declaring other
dividends until the true list of the stockholders is ascertained.

The affidavits on the part of the plaintiffs show that after
the discovery of the fraud, as committed by Schuyler, Hol-
brook was employed by the directors to examine the books of
the company and make out a list of the stockholders of the
company, as distinguished from those who held the false stock
issued by Schuyler; that he discharged that duty, and ren-
dered to the board what he believed to be a true list of such
stockholders; that Holbrook afterwards entertained doubts as
to the genuineness of some of the stock which he had returned
as good stock, and made a second examination, in which he
discovered, as he thought, an error as to 173 shares, belong-
ing to twenty-four different parties, which were by the first ac-
count thought to be genuine, and on the second found to be
spurious; that, after completing such examination, Holbrook
was preparing a new list of the genuine stockholders, and so
informed the president, who replied to him that they wanted
no new list of stockholders.

It also appears that the commencement of the fraudulent

NEW–YORK PRACTICE REPORTS.     539

Underwood agt. The New-York and New-Haven Railroad Co.

issues of the stock by Schuyler was long previous to the time when the directors have assumed that Schuyler made the first fraudulent issues of stock. Whether any of the stock, so fraudulently issued prior to 1853, found its way upon the transfer books of the company is not distinctly stated; but it does appear that as early as 1850 the stock ledger of the company showed, in the accounts of Schuyler and of the firm of R. & G. Schuyler, a large excess of over issue of shares over and above the balance shown by the debit and credit sides of the account, exceeding more than a thousand shares.

It is also stated that a separation of the stock, which commenced in 1853, must be defective and erroneous. Other facts are also stated in the affidavit, tending to establish the fact that the separation of genuine and spurious stock, as made by order of the board of directors, and upon which the payment of the two dividends have been based, was erroneous, and might extend to nearly 1,200 shares of the stock.

It is shown on the part of the defendants that, from an examination of the stock account of Schuyler in the stock ledger, the debit and credit sides balanced, with the exception of four shares standing to the credit of Schuyler; but it does not appear that any such examination has been made as will authorize the statement that none of the spurious stock, issued by Schuyler previous to the year 1853, had been transferred on the books of the company.

From the facts stated on the part of the plaintiffs, it must be apparent that a more thorough examination of the stock ledger, and of the transfers of stock previous to 1853, is necessary before the true character of the stock, held by those to whom the company propose to pay dividends, can be ascertained. If in no other way, the title to all the stock from the original subscribers can be traced through those to whom such stock has been from time to time transferred, until it is found in the possession of the present holders; when that title is thus ascertained, there can be but little difficulty in rejecting the residue as spurious stock.

It is true that questions may arise, such as one suggested in

the affidavits used on this motion; but the mere statement of such difficulties only shows the propriety of using more caution, and of making more thorough examinations before the company should decide to pay the profits of their business to those who may hereafter be found not entitled to share therein; and if such doubts and uncertainty exist, it only exhibits more clearly the impropriety of making any such distribution of profits, until, by a judicial decision, the character of the respective shares of stock is established.

It is objected, however, to the granting of this injunction, that the complaint does not show any particular danger of loss to the plaintiffs beyond the paying improperly a sum of money, and that for this an action at law may be maintained against the company. Such can hardly be said to be the consequences of the facts stated in the complaint. It is not confined in its allegations to the present dividend, but avers that the board of directors have declared their purpose to continue to pay dividends to the persons selected by them as the genuine stockholders.

I suppose a stockholder is not to be turned over to an action against the company (in which he must bear a part of the loss as a stockholder in case of recovery), when it appears that by an established course of proceeding the profits of the company from time to time are to be divided in part to persons not entitled thereto.

Such a course, if continued, would consume a large amount of the funds of the company, and would seriously affect the value of the genuine stock, and the plaintiffs should not be compelled to resort to that action as the only remedy for preventing such loss; on the contrary, it is apparent that the injury to him, as a genuine stockholder, cannot be remedied by an action for a specific sum; the probable or possible damage to the value of his stock, if the dividend were improperly paid, would be a sufficient consideration to authorize granting such an injunction.

These remarks also dispose of the objection that the interest of the plaintiffs in the amount to be paid for the dividend was

Underwood agt. The New-York and New-Haven Railroad Co.

so small that the plaintiffs were not entitled to the relief they ask for. If the present dividend was the only one to be paid, such an objection would be entitled to consideration. But the plaintiffs' application relates not only to the present, but to future dividends, the amount or number of which is not limited, and, as before remarked, the depreciation of stock by erroneous payments, as well as future dividends, must be considered in deciding upon the propriety of granting this motion.

It is also objected that this company is a foreign corporation, and ought not to be restrained in this state. Conceding that rule to be a correct one where a corporation transacts all its business beyond the state where the action is brought, and has no property within the state, it can hardly be said to be applicable to a railroad corporation, which operates more than one-third of its road within the state and keeps an office for the transaction of its business here, and more especially so when, by the act of the legislature of this state granting to the company the right to extend their road through this state, it was provided "they should be liable in the same manner as corporations in this state, to be sued by summons." If, in extending the road, the company had threatened to do some serious injury to a landholder on the line of the road, without compensation, there could be no doubt of the power of the courts of this state to prevent such injury, or give a suitable redress for it, either by injunction or damage, or both; and if a citizen can be protected against the company as to real estate, I see no reason why he is not entitled to the same protection as to his personal property.

This case is distinguished from the other cases of a similar character which have been before the court, in that it is brought by a genuine stockholder, and not for the benefit of himself and other stockholders. The other cases were dismissed for reasons not existing in this case.

The suggestion, that the company would not be bound to obey an injunction in Connecticut, and that they could go there and make the payment of the dividend if they saw fit to do so, can hardly call for an answer here. With that the court at

present have nothing to do; when such a case is presented to the court, it will then be time enough to inquire whether any remedy exists for disobeying the writ; but it can hardly be supposed that any corporation, situated as this is in regard to its road and property within this state, would venture to carry out such suggestion.

The conclusion to which I have arrived is, that the order restraining the defendants should be to a certain extent granted. The dividend now declared belongs to the genuine stockholders. Whenever it is ascertained who they are, they will be entitled to receive their portions, and so far as it can be ascertained that any of the stockholders hold none of the stock that is not genuine, there is no reason for prohibiting the payment to them of the dividend now declared by the company.

In the affidavits submitted to me on the part of the defendants, it is stated, that more than one-half of the original subscribers for the stock continue to hold their stock to the present time. There is no doubt as to their right to the dividend now declared, and as there are no allegations that any fraudulent stock was issued prior to 1850, there seems to be no good reason for restraining the payment of the dividends upon any stock which is now held by persons who held it prior to 1850, and have not transferred their stock at any time since that period.

With these exceptions, the injunction is continued as to all other stockholders, and the directors are prohibited from making any future dividend on the stock of the corporation until, by the decision of some court of competent jurisdiction, it shall be established who are the genuine stockholders in the company, or until the further order of the court herein.